DANIEL E. MARTYN, JR. (State Bar No. 138122)
JOHN E. MORAN (State Bar No. 94179)
DIANA S. PONCE-GOMEZ (State Bar No. 187136)
DANNER & MARTYN, LLP
100 E. Thousand Oaks Blvd., Suite 244
Thousand Oaks, California 91360
Telephone:  (805) 777-8700
Facsimile:  (805) 778-0736

Attorneys for Plaintiff
DIRECTV, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DIRECTV, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CAREY MANSON; MARSHALL BOOTH, III; JESS GONZALEZ,<br><br>　　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND FOR INJUNCTIVE RELIEF** |

　　　　Plaintiff, DIRECTV, Inc. ("DIRECTV"), hereby complains as follows with respect to its claims arising under federal question jurisdiction 28 U.S.C. §§ 1331 and 1338(a).

## NATURE OF THIS CASE

　　　　1.　　DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 10 million homes and businesses in the United States.  DIRECTV's television programming currently includes major cable networks, studio movies and special events programming, as well as a variety of sports and other special interest programming.  DIRECTV, a California company, has invested more than $1.25 billion to develop its direct broadcast satellite system.

///

2. DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only. Each customer is required to obtain a DIRECTV Access Card and other system hardware (including a small satellite dish) and create an account with DIRECTV. Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

3. On May 25, 2001, DIRECTV executed Writs of Seizure, with the assistance of local law enforcement, at the mail shipping facility used by several major sources of pirate technologies including, but not limited to, Vector Technologies, DSS-Stuff, DSSPro, DSS-Hangout, White Viper Technologies ("White Viper"), Shutt Inc., and Canadian Security and Technology. During and subsequent to the raids, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts and other records. Those records evidence each defendant's purchase of illegal "Pirate Access Devices" (as defined herein). In reliance upon those records and other information, and upon information and belief, DIRECTV sets forth the allegations in this complaint.

4. On July 11, 2001, DIRECTV executed Writs of Seizure, with the assistance of local law enforcement and the U.S. Marshal Service, in the matter of DIRECTV v. John Brooks (hereinafter "Brooks") et al, Civil Action No. L-01-CV-2015, in the United States District Court for the District of Maryland. During and subsequent to the raids, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts, and other records. Those records evidence certain of the Defendants' purchases of illegal Pirate Access Devices. In reliance upon those records and other information, and upon information and belief, DIRECTV sets forth the allegations in this Complaint.

5. Each defendant is a resident of this District. DIRECTV alleges that each defendant has purchased and used illegally modified DIRECTV Access Cards and other devices ("Pirate Access Devices") that are designed to permit viewing of DIRECTV's television programming without

1 authorization by or payment to DIRECTV.

2     6.    Each defendant's activities violate federal telecommunication and wiretapping laws and
3 common law.  Specifically, each defendant's actions violate the Federal Communications Act of 1934,
4 as amended, 47 U.S.C. § 605 and the Electronic Communications Privacy Act (Federal Wiretap
5 Laws), 18 U.S.C. §§ 2510-2521.  As a result of each defendant's decision to obtain Pirate Access
6 Devices and the detrimental impact that such activities have on the company, DIRECTV brings this
7 action seeking damages and injunctive relief against each defendant's continued possession and/or use
8 of Pirate Access Devices.

## JURISDICTION AND VENUE

10     7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a),
11 47 U.S.C. § 605(e)(3)(A) and 18 U.S.C. § 2520(a) because the claims in this action arise under the
12 Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 and the Electronic
13 Communications Privacy Act (Federal Wiretap Laws), 18 U.S.C. §§ 2510-2521.

14     8    This Court may exercise supplemental jurisdiction pursuant 28 U.S.C. § 1367(a) over
15 the state law claims asserted herein.

16     9.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because each defendant is a
17 resident of this district and is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

19     10.    Assignment of this action to the Oakland Division of the United States District Court
20 for the Northern District of California is proper pursuant to Civil Local Rule 3-2(c) and Civil Local
21 Rule 3-2(e) because the events which give rise to the claims in this action occurred in the county of
22 Alameda.

## PARTIES

24     11.    Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the State
25 of California.  DIRECTV has significant interests in maintaining and securing the integrity of its
26 satellite transmissions of television programming, and in prohibiting the unauthorized reception and
27 use of the same.

28 ///

1    12.    Defendant CAREY MANSON is a resident of Castro Valley, California. Upon information and belief, beginning in or about July 2000, Defendant CAREY MANSON purchased one or more Pirate Access Devices from Shutt and Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

(a)    On or about July 27, 2000, Defendant CAREY MANSON purchased a Pirate Access Device, consisting of a printed circuit board device called a "Wildthing 2 Unlooper," from Shutt. The device was shipped to Defendant CAREY MANSON at his address in Castro Valley, California.

(b)    On or about March 26, 2001, Defendant CAREY MANSON purchased a Pirate Access Device, consisting of a printed circuit board device called a "Vector Super Unlooper with SU2 Code," from Vector Technologies. The device was shipped to Defendant CAREY MANSON at his former address in Castro Valley, California.

13.    Defendant MARSHALL BOOTH, III is a resident of Oakland, California. Upon information and belief, beginning in or about September 2000, Defendant MARSHALL BOOTH, III purchased one or more Pirate Access Devices from White Viper. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

(a)    On or about September 21, 2000, Defendant MARSHALL BOOTH, III purchased a Pirate Access Device, consisting of a programmer primarily designed to illegally modify DIRECTV Access Cards called a "Viper Smart Card Reader/Writer," from White Viper. The device was shipped to Defendant MARSHALL BOOTH, III at his address in Oakland, California.

(b)    On or about September 28, 2000, Defendant MARSHALL BOOTH, III purchased a Pirate Access Device, consisting of a printed circuit board device called a "Wildthing 2 Unlooper," from White Viper. The device was shipped to Defendant MARSHALL BOOTH, III at his address in Oakland, California.

14.    Defendant JESS GONZALEZ is a resident of Oakland, California. Upon information and belief, beginning in or about January 2001, Defendant JESS GONZALEZ purchased one or more

Pirate Access Devices from CleanHCards.  Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers.  Specifically, these illegal purchases included the following transaction:

(a) On or about January 25, 2001, Defendant JESS GONZALEZ purchased a Pirate Access Device, consisting of an illegally preprogrammed DIRECTV Access Card that is designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV, from CleanHCards.  The device was shipped to Defendant JESS GONZALEZ at his address in Oakland, California.

## FIRST CLAIM

## UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS

## IN VIOLATION OF 47 U.S.C. § 605(a)

15. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 14 as if set forth fully herein.

16. Each defendant has received and assisted others in receiving DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

17. Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

18. Each defendant knew or should have known that receiving and assisting third persons in receiving DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, each defendant will continue to violate 47 U.S.C. § 605(a).

///

///

## SECOND CLAIM

## UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS

## IN VIOLATION OF 18 U.S.C. § 2511(1)(a)

19. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 18 as if set forth fully herein.

20. By using Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, each defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. § 2511(1)(a).

21. Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

22. Each defendant knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, each defendant will continue to violate 18 U.S.C. § 2511(1)(a).

## THIRD CLAIM

## POSSESSION OF PIRATE ACCESS DEVICES

## IN VIOLATION OF 18 U.S.C. § 2512(1)(b)

23. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 22 as if set forth fully herein.

24. Each defendant has used Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, with intent to avoid payment of the lawful charges therefor, by trick, artifice, deception, use of a device or decoder, and other fraudulent means, without authority from DIRECTV, in violation of 18 U.S.C. § 2512(1)(b).

25. Each defendant has possessed and used Pirate Access Devices, with intent to avoid payment to DIRECTV of the lawful charges for its programming, that are designed in whole or in part to receive subscription television services offered for sale by DIRECTV, without authority of DIRECTV, in violation of 18 U.S.C. § 2512(1)(b).

26. Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

27. Each defendant knew or should have known that possessing Pirate Access Devices was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, each defendant will continue to violate 18 U.S.C. § 2512(1)(b).

## FOURTH CLAIM
## CONVERSION

28. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 27 as if set forth fully herein.

29. By importing, possessing and using Pirate Access Devices, each defendant has unlawfully converted to her own use and benefit property belonging to DIRECTV.

30. Such conversion was done intentionally and wrongfully by each defendant to deprive DIRECTV of its proprietary interests and for each defendant's direct benefit and advantage.

31. As a direct and proximate result of each defendant's unlawful acts, DIRECTV has suffered and continues to suffer damages, including lost subscription and pay-per-view revenues and other valuable consideration.

///

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1)   Find the defendants' conduct in importing, possessing and using Pirate Access Devices violates 47 U.S.C. § 605(a) and (e)(4), 18 U.S.C. §§ 2511(1)(a) and 2512(1)(b), and California common law, and further find that defendants' violations were willful, malicious or for a tortious or illegal purpose;

(2)   In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin and restrain each defendant, and persons controlled directly and indirectly by each defendant, from importing, possessing, or using Pirate Access Devices, and further order each defendant to surrender all Pirate Access Devices;

(3)   In the event of a default, an award of statutory damages of $10,000 for each Pirate Access Device imported into the United States in violation of 47 U.S.C. § 605(e)(4), and a further award of DIRECTV's reasonable attorneys' fees and costs of suit;

(4)   In the event of trial, an award of either (a) statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2), or (b) compensatory and punitive damages in accordance with 605(e)(3)(C)(i)(I), 18 U.S.C. § 2520(c)(2), and California common law; and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

(5)   For such additional relief as the Court deems just and equitable.

Dated: May____, 2003

DANNER & MARTYN, LLP

By:_____
Diana S. Ponce-Gomez
Attorneys for Plaintiff DIRECTV, INC.